PHŒNIX IRON WORKS CO. *v.* RHEA.

(*Nashville.* April 4, 1897.)

SET-OFF. *By surety for breach of warranty made with principal.*

A surety sued alone upon a note without joining his principal, cannot set off or recoup a claim for damages for breach of a warranty, made by the payee with the principal, without the consent of the latter.

Code construed: §4641 (S.); §3630 (M. & V.); §2920 (T. & S.).

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County T. H. MALONE, Ch.

N. D MALONE for Iron Co.

J. C. BRADFORD and VERTREES & VERTREES for Rhea.

McALISTER, J. This bill was filed in the Chancery Court of Davidson County against the defendants, Isaac T. Rhea and Thomas W. Wrenne, as sureties on three promissory notes, executed by the Savannah Street Railway and payable to complainant, the Phœnix Iron Works Company. The railroad company, as principal, was not sued, but the suit

is alone against the sureties. The railroad company was engaged in operating a system of electric railway in Savannah, Ga., and complainant, the Phœnix Iron Company, sold to the street railway company a steam plant, consisting of steam engines, boilers, and other appliances. The notes in suit were executed and delivered to complainant, the said iron company, by the street railway company, in payment of the steam plant.

The sureties resist the payment of said notes upon the ground that the Phœnix Iron Works Company breached the guaranties of its written contract with the street railway company in respect to the fuel economy and efficiency of said steam plant. It was insisted that the fuel economy of the engines was not as guaranteed, but far below such guaranty, and that, in consequence, the railway suffered great loss and damage; that the construction of the furnaces of the said steam plant was defective in this: That the side walls were too close to the boilers and contracted the heating surfaces in them; that, on account of the inferior and defective material and workmanship of said engines, they are inefficient and practically worthless, and require expensive overhauling; that the consideration of said notes has failed, and that the railway has suffered losses in consequence thereof to an amount in excess of the notes. A jury was demanded by defendants, and certain issues of fact were submitted by both parties. The issues submitted by defendants were, viz.:

1. Whether the engines and steam plant were, in fact, of the quality, goodness, and efficiency, as guaranteed by the complainant.

2. Whether they were, in goodness, quality, and efficiency, fit for the uses for which they were sold to the purchaser, the Savannah Street Railway Company.

3. Was the original erection and setting up of the plant, boilers, and engines in the power station of the said street railway company at Savannah faulty and defective; if so, in what respect?

4. Whether all the guaranties, agreements, and covenants set out and specified in the contract with respect to the steam plant described therein were complied with, performed, and fulfilled; and, if not, in what particular?

5. What losses or damages were suffered by the Savannah Street Railway Company in consequence of the defects in the plant, due to the faulty construction thereof, to the failure of the warranties in the services of the engine, in respect to the material, workmanship, and fuel economy, and to the unfitness of the plant for the uses and purposes for which it was purchased by said street railroad company.

The complainant, the Phœnix Iron Works Co., in turn, submitted five issues of fact for the determination of the jury, to wit:

1. Did not complainant supply the parts of machinery which defendants claim were defective?

2. Has there been a settlement of all damages

claimed by defendants on account of defective machinery or workmanship?

3. Was the steam plant erected according to plans and specifications, and approved by the officers and agents of the Savannah Street Railway Company?

4. Was the steam plant erected under the personal supervision of the agent and manager of the street railroad company?

5. Was the plant tested for sixty days and accepted by the defendant's principal, the said Savannah Street Railway Company, and a settlement therefor made as provided in the written contract?

The jury were unable to agree upon many of the issues submitted, but they did find that complainant had supplied all the parts of the machinery which the defendants claimed were defective, and they found further that the plant had been tested for sixty days, and accepted by defendants' principal, the Savannah Street Railway Company, and a settlement made therefor as provided in the written contract. The Chancellor was therefore of opinion "that the contract was an executed contract, and that in a suit on the notes the sureties cannot rely on breach of warranty, either as a set-off or by way of recoupment. The Court being further of opinion that all other issues submitted to the jury were immaterial, decreed in favor of complainant for the full amount of said notes against the defendant sureties."

Phœnix Iron Works Co. *v.* Rhea.

Defendants appealed, and have assigned errors. The Court of Chancery Appeals affirmed the decree of the Chancellor, but based its decree exclusively upon the ground that when the surety is sued alone, without joining his principal, he cannot avail himself of warranties reserved on behalf of the principal, or of the right of recoupment. The Court of Chancery Appeals, after full quotations from the case of *Gillespie* v. *Torrance*, 22 New York, concludes its opinion through Judge Neil, viz.: "As is well said in that case, such damages constitute a counterclaim and not a mere failure of consideration, and, not being due to the defendants, cannot be claimed by them. In such a case, the principal debtor has a right of election whether the damages shall be claimed by way of recoupment in a suit on the note or reserved for a cross action. The defendants cannot make the election for him. If, in such case, the surety had the right to set up a counterclaim, and have it allowed, it would bar any future action by the principal debtor for such damages, and as no balance could be found in the sureties' favor, he might then bar a large claim in canceling a small one. If the right exists in this case, it equally exists if the claim were but $100 instead of many thousand. And supposing the three notes sued on had different sureties, each of these sureties would have the same right as the present defendants. If they were to set up the same défense, how would the conflicting claims be reconciled? We entirely

14 P—30

concur in this view of the subject, which is well sustained by the authorities.''

But, independently of these considerations, we have an express statute on this subject, which provides, viz.: ''A maker or surety, when sued alone, may, with the consent of his co-maker or principal, avail himself, by way of set-off, of any of the foregoing debts or demands held by such co-maker or principal at the commencement of the action and matured when offered in set-off.'' Shannon's Code, § 4641. This statute applies as well in a Court of Equity as a Court of Law, and, whatever may have been the rule prior to the passage of the statute, it is certain now that a surety cannot avail himself of his principal's defenses, when sued alone, without the consent of the principal.

It is argued that it is not necessary that this consent should be set up in the answer, but that it is sufficient if it appears in the proof. If this proposition be conceded, the Court of Chancery Appeals found, as a fact, that there is no evidence in the record showing that these defendants have the consent of their principal debtor to appropriate its defenses.

The decree of the Chancellor and of the Court of Chancery Appeals is affirmed.